IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Donna Joy Pearson, ) | C/A No. 8:19-cv-02316-DCC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Andrew Saul, Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter comes before the Court on Defendant's Objections to the Magistrate Judge's Report and Recommendation ("Report"), which recommended reversing the decision of the Commissioner of Social Security ("Commissioner") and remanding the case to the Commissioner for further administrative proceedings consistent with the Court's ruling. ECF Nos. 21, 22. Having considered the parties' briefing and all relevant law, the Court overrules Defendant's Objections and adopts the Magistrate Judge's Report for the reasons that follow.

**BACKGROUND**

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner's final decision denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff filed applications for both DIB and SSI on July 21, 2016, alleging disability due to brain injury and an IQ of 71. (R. 93–94, 106–07). Plaintiff's applications were denied initially and on reconsideration. (R. 104, 117, 133, 147). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 31, 2018. (R. 32–64). The

1

ALJ denied Plaintiff's application in a decision issued November 13, 2018. (R. 13–22). The Appeals Council denied Plaintiff's request for review on July 8, 2019, making the ALJ's denial the final decision of the Commissioner. (R. 1–3).

Plaintiff filed suit in this Court on August 16, 2019. ECF No. 1. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to a United States Magistrate Judge for pre-trial handling. On April 30, 2020, Magistrate Judge Jacquelyn D. Austin issued her Report recommending that the decision of the Commissioner be reversed and remanded. ECF No. 21. On May 13, 2020, the Commissioner filed Objections to the Report. ECF No. 22. Plaintiff filed a Response on May 19, 2020. ECF No. 24. The Commissioner's Objections and the Magistrate Judge's Report are now before the Court.

## **STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act ("the Act") is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v.*

*Celebreeze*, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision as long as it was supported by substantial evidence and reached through the application of the correct legal standard.  *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005).  "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action."  *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational."  *Vitek*, 438 F.2d at 1157–58.

## DISCUSSION

The Magistrate Judge recommended that the Court reverse and remand the Commissioner's decision because the ALJ failed to comply with the Treating Physician Rule in weighing the opinions of Joseph Friddle, P.A., and psychiatrist Dr. Jeff Smith[1] by presenting "good reasons" for their rejection.  The Commissioner objects on the basis that the ALJ's decision was reasonable and supported by substantial evidence.

The ALJ recognized that PAC Friddle was a "treating source" and this finding is undisputed.  (R. 22).  For claims filed before March 27, 2017, the ALJ must apply the following standard, commonly known as the "Treating Physician Rule":

---

[1] The relevant medical opinions were written by PAC Friddle and signed by treating psychiatrist Dr. Smith.

3

> If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).  The regulation further provides that the Commissioner "will always give good reasons . . . for the weight we give your treating source's medical opinion."  While the ALJ did not assign a specific weight to PAC Friddle's opinions,[2] she articulated multiple reasons for not assigning controlling weight to the opinions and concluded that the record did not support the limitations described.  These reasons were as follows: (1) Plaintiff's lack of recent treatment for and significant improvement from her traumatic brain injury ("TBI") sustained in 2011, to which PAC Friddle in part attributed Plaintiff's mental limitations; (2) the absence in PAC Friddle's mental health records of "actual testing or findings concomitant with such extreme limitations" as expressed in his Statements; (3) the fact that Plaintiff's mental condition during treatment was "complicated by temporal issues" in her personal life; (4) PAC Friddle's records' tending to show Plaintiff's concentration was "good"; (5) PAC Friddle's failure to account for Plaintiff's good response to medications and treatment; and (6) inconsistency with the record as a whole.[3]  (R. 22).

---

[2] Generally, an ALJ's failure to assign a specific weight to a medical opinion is not reversible error.  *See, e.g., Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 100–01 (4th Cir. 2015).  Plaintiff makes no argument to this effect.

[3] The ALJ also stated that "any determination regarding employability is strictly reserved for the Commissioner."  (R. 22).  Because this is both indisputably true as a matter of law and largely irrelevant to the weight given to PAC Friddle and Dr. Smith's opinions, which include numerous specific medical findings, it does not merit further discussion.

4

The Court agrees with the Magistrate Judge's finding that the stated reasons are insufficient to satisfy the requirements of § 404.1527(c)(2).  First, the ALJ does not properly explain how or why the medical evidence regarding Plaintiff's 2011 TBI discredits PAC Friddle's opinions.  The ALJ's opinion states: "[PAC Friddle] attributes part of the claimant's mental limitations to the TBI in 2011.  As has been discussed, the claimant has not received treatment for the TBI in several years and it appears has made significant improvement since 2011."  (R. 22).  It is not clearly apparent that the absence of TBI treatment for several years indicates that Plaintiff's symptoms could not be due, in part, to her TBI, and the ALJ cited no medical evidence in reaching this conclusion.  Moreover, the finding of Plaintiff's alleged "significant progress" is based solely on a previous ALJ decision, excerpted as follows:

> In July 2011, [Plaintiff] was seen at Spartanburg Regional Medical Center following a motorcycle accident.  She was treated for a scalp laceration, punctate intraparenchymal hemorrhage, and nasal bone fracture secondary to trauma.  CT scans of the abdomen, pelvis, and cervical spine were negative.  In August 2011, she was indicated as having a right rib fracture. Records from Carolina Physical Medicine Group & Rehabilitation show that she underwent physical therapy in August and September of 2011.  She is indicated as having responded favorably to treatment procedures, and upon completion had all issues resolved except for some minor irritation from her fractured right 14 rib region.  Treatment records from Wellness Family Medicine show treatment for several conditions, but indicate in October 2011 that she was feeling much better, sleeping well, doing well at work, and not crying.  Her spine was less tender, her range of motion was better, and she was much les depressed.

(R. 21) (internal citations omitted).

Based on the excerpted findings above, the ALJ concluded:

The prior ALJ decision shows the claimant made significant progress after the accident in 2011.  The fact that she has not received significant treatment for TBI in the instant matter only supports a finding that Ms. Pearson has made significant progress since 2011.

5

(R. 21). In fact, the excerpt from the prior ALJ's decision includes no discussion of Plaintiff's TBI and whether, or how much, it improved. The present ALJ decision cites to no medical evidence or opinion of improvement in Plaintiff's TBI, except for "[t]he fact that she has not received significant treatment" in several years. (R. 21, 22). But the ALJ is not qualified to conclude from Plaintiff's treatment records or lack thereof that her TBI has "significantly" improved. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (prohibiting the ALJ from "playing doctor" in evaluating the medical evidence) (citing 20 C.F.R. §§ 404.1529, 416.929; *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)). Certainly, the ALJ's medically unsupported conclusions are not sufficient to discredit the treating physicians' opinion that Plaintiff's mental limitations are due in part to her TBI.[4] The only other mention of Plaintiff's TBI in the ALJ's opinion is the statement of Denise Levereaux, LISW-CP, which indicated diagnoses of "mood disorder vs. mood disorder due to traumatic brain injury and reported the claimant had profound inability to remember what had been discussed in previous sessions and did not remember homework assignments or behavioral skills." (R. 16). This statement does nothing to discredit the opinions of PAC Friddle and Dr. Smith. In sum, upon examination, Plaintiff's alleged improvement in her TBI does not appear to be a "good reason" for declining to afford PAC Friddle's opinions controlling weight.

---

[4] Even if there were medical evidence of improvement in Plaintiff's TBI, it is unclear how this improvement would undermine PAC Friddle and Dr. Smith's opinions of Plaintiff's limitations. They opined in 2018 that Plaintiff's limitations were also caused by her severe anxiety and depression. (R. 507). In 2014, they opined that Plaintiff's major depression and anxiety disorder were "exacerbated in 2010 when she suffered a traumatic brain injury." (R. 442). These opinions would not be obviously discredited if Plaintiff's TBI (but not her anxiety or depression) had significantly improved.

Second, the ALJ declined to give PAC Friddle's opinions controlling weight because his "mental health records do not provide results of actual testing or findings concomitant with such extreme limitations as expressed in his Statements," and "his medical records generally contain subjective complaints by the claimant." (R. 22.) The Court finds that this determination is, at best, inadequately explained. It is not apparent from the record that either (1) PAC Friddle's records generally contain subjective symptom reports without actual testing or findings, or (2) the results of those tests or findings are inconsistent with his opinions of Plaintiff's limitations. Each visit report with PAC Friddle contains the header "Objective" and the sub header "Exams," followed by the results of PAC Friddle's in-office exam and objective findings. (*See*, *e.g.*, R. 490, 492, 494, 496, 498, 500, 502.) Therefore, to the extent the ALJ meant to express that PAC Friddle's mental health records were predominantly based on subjective complaints and included few objective findings, her determination is flatly contradicted by the evidence.

If the ALJ additionally intended to imply that PAC Friddle's objective findings were inconsistent with the limitations expressed in his opinions, she did not explain how or why. Beginning in May 2016, PAC Friddle's exam findings consistently noted, inter alia, that Plaintiff had "scattered" concentration and focus, "poor" judgment and insight, and "homicidal and suicidal thoughts." (R. 476, 478, 480, 482, 484, 486, 488, 490, 492, 494, 496, 498, 500, 502). Absent further explanation by the ALJ, it is not apparent how these findings are inconsistent with an opinion of poor or no ability to follow work rules; to relate to coworkers; to deal with the public; to interact with supervisors; to use judgment; to deal with work stresses; to function independently; to maintain attention and concentration; to understand, remember, and carry out complex or detailed job instructions; to behave in

an emotionally stable manner; to relate predictably in social situations; or to demonstrate reliability. (R. 505–06). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Because the ALJ in this case failed to do so, her reasoning is insufficient to reject the opinions of Plaintiff's treating source.

Third, the ALJ stated that Plaintiff's mental condition "was complicated by temporal issues such as marital problems with a common law husband and financial matters." (R. 22.) To the extent this is a simple statement of fact about the factors contributing to Plaintiff's mental state, it has no bearing on whether PAC Friddle opinions should receive controlling weight. However, the ALJ also noted earlier in her decision:

> It is only logical to assume that some, if not much, of [Plaintiff's] impaired concentration was the result of her common law husband's use of meth and that he moved another woman into their home. She was also experiencing financial difficulties as well. While such difficulties can cause depression and anxiety and can be severe, they also can be temporal in nature.

(R. 20). This Court can only conclude, as did the Magistrate Judge, that the ALJ meant to express that some of Plaintiff's mental symptoms were only temporary because they were caused by personal events, and therefore her condition was not really as serious as alleged by her treating medical providers. The Court finds no medical evidence of record for this proposition. Rather, the ALJ appears to have been impermissibly "playing doctor." *See Lewis*, 858 F.3d at 869. It was improper for the ALJ to "assume," without medical corroboration, that "some, if not much" of Plaintiff's mental symptomatology (specifically, her impaired concentration) was caused by these "temporal" factors. It was likewise improper for the ALJ to conclude that these "temporal factors" somehow discredited the

8

seriousness of Plaintiff's mental condition. Consequently, the Court finds this was not a proper reason for declining to afford PAC Friddle's opinions controlling weight.

Fourth, the ALJ found that PAC Friddle's "record[s] tend to show the claimant's concentration was good, but that there were times when her concentration was described as scattered." (R. 22). The Court agrees with the Magistrate Judge's finding that this statement inaccurately characterizes the available evidence. In May 2016 and at every single visit thereafter, PAC Friddle's exam records note that Plaintiff's concentration and focus were "scattered." (R. 476, 478, 480, 482, 484, 486, 488, 490, 492, 494, 496, 498, 500, 502). It was therefore misleading at best to conclude that PAC Friddle's records "tend to show" good concentration or that "there were times" when Plaintiff's concentration was scattered. Furthermore, it is not directly apparent how these exam findings conflict with PAC Friddle's opinion of "poor to no" ability to maintain attention and concentration or with any of his other opinions.

Fifth, the ALJ found that PAC Friddle's opinions "do not account for the fact that the claimant[] seems to respond well to medications and treatment." (R. 22.) The ALJ found previously:

> The record in this matter shows the claimant responds well to medications. Even as far back as 2012 Dr. Ruffing reported her symptomatology was mild which could have been due in part to medication treatment (supra). Ms. Pearson responded well to treatment in May 2016 when she was hospitalized at Marshall Pickens. She presented to the ED of Spartanburg Regional in November 2016; however, the records show she had been out of medications for several weeks. Records from PPS [Piedmont Psychiatric Services] show that medications were helpful when she could afford them (supra). Thus, there is clear evidence within the records that medications help the claimant's medical conditions and attendant symptoms.

(R. 20). The Medical Assessment dated June 12, 2018, and signed by PAC Friddle and Dr. Smith, opined "poor to no" ability in numerous categories and stated:

9

> Any and all limitations marked as "poor" in this questionnaire are impaired due to the severity of her anxiety, depression, and traumatic brain injury. She is unable to (1) be punctual/reliable (2) perform even simple job tasks accurately and efficiently due to her poor focus (3) communicate w/general public and/or supervisors in an emotionally stable manner due to her mood lability and severe anxiety.

(R. 507).  The Court finds no indication, in this medical opinion or any other, that PAC Friddle failed to consider the effect of medications and treatment on Plaintiff's mental health.  Indeed, PAC Friddle's treatment records repeatedly reference Plaintiff's medications and their effects, both positive and negative.  Furthermore, the ALJ's generalized finding that Plaintiff "responds well to medications," (R. 20), even if true and adequately supported, says nothing about Plaintiff's specific abilities and limitations with or without medication—only that they are improved by medication.  This finding does not, without more, establish an "accurate and logical bridge" to the conclusion that PAC Friddle's opinions do not merit controlling weight.  *Monroe*, 826 F.3d at 189.

Finally, the ALJ found that "the record as a whole does not support [PAC Friddle's] extreme limitations."  (R. 22.)  This vague, generalized statement falls far short of the ALJ's duty to explain her conclusions and provides no basis from which the Court can make a determination about substantial evidence.

Because the reasons provided for assigning the treating source's opinions less than controlling weight are inadequate, both singly and in combination, and because the Court cannot find that the ALJ's failure to comply with the Treating Physician Rule was harmless,[5] the Commissioner's decision must be reversed and the case remanded.

---

[5] The Commissioner argued that the ALJ's discussion of Plaintiff's "interpersonal difficulties and stressors," even if improper, would be harmless error because "the ALJ cited a reasonable basis for her findings, including her rationale for having ultimately declined to adopt Mr. Friddle's opinions here."  ECF No. 22 at 4.  Because the Court finds

10

**CONCLUSION**

For the reasons set forth above, the Court **ADOPTS** the Report and **REVERSES** the decision of the Commissioner. This case is hereby **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.<br>United States District Judge

December 11, 2020
Spartanburg, South Carolina

---

no reasonable basis for the ALJ's decision not to adopt PAC Friddle's opinions, it must likewise find that the ALJ's error in this respect was not harmless.

11